UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL POND,                              :
      Plaintiff                      :
                                              :
      v.                             :        NO. 3:11-cv-00984 (DJS)
                                              :
TOWN OF NORTH BRANFORD,                   :
      Defendant                      :
                                              :
                                              :

<u>MEMORANDUM OF DECISION</u>

The Plaintiff, Daniel Pond, brings this action against the Defendant,  Town of North

Branford ("the Town").  The Plaintiff seeks compensatory damages, attorney fees, costs of the

action, as well as other relief deemed equitable by this Court.  In his complaint, the Plaintiff

alleges the violation of his rights secured under the Americans with Disabilities Act of 1990, 42

U.S.C. § 12111, *et seq*., ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §

701, *et seq*.[1]

The Town has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c),

seeking the dismissal of this action under the doctrine of *res judicata*. For the reasons that follow,

the Town's motion for judgment on the pleadings **(dkt. #21)** is **GRANTED**.

I. STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "When [a party] mov[es] to dismiss based

---

[1] The Plaintiff's complaint alleges compliance with all procedural prerequisites to suit, based on the Plaintiff having filed a timely claim with the United States Equal Employment Opportunity Commission dated June 4, 2009, and having received a notice of right to sue from the Civil Rights Division of the United States Department of Justice dated and mailed from Washington, D.C., on April 7, 2011.

on facts beyond the bare face of the complaint, the motion is properly pursuant to Fed. R. Civ. P. 12(c), judgment on the pleadings." Peia v. United States, 152 F. Supp. 2d 226, 232 (D. Conn. 2001). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). A court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions . . . ." Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (internal quotation marks omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quotation marks omitted).

"The defense of res judicata may be asserted in a 12(b)(6) motion if its availability appears from the plaintiff's pleadings." Southard v. Southard, 305 F.2d 730, 732 n.1 (2d Cir. 1962); see also Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir.1994) ("*Res judicata*

challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)").

## II. FACTS

A. Background

Plaintiff served as a highway employee for the Town of North Branford from the date of his hire, August 12, 2002, to the date of his termination, June 4, 2009.  At all relevant times, the Plaintiff suffered from medical disabilities (panic anxiety disorder, shy bladder and constriction of the prostate) which made it "virtually impossible for him to urinate on demand and severely limit[ed] his ability to urinate under any circumstances."  (Doc. # 1, at 2, ¶ 9).

Because the Plaintiff possessed a commercial driver's license ("CDL"), he was required to submit to random drug testing mandated by the Federal Omnibus Transportation Employee Testing Act of 1991, 49 U.S.C. § 31306, *et seq*. ("FOTETA")[2] and its supporting regulations, 49 C.F.R. § 382.101, *et seq*.[3]  On February 15, 2008, the Town subjected the Plaintiff to a drug test in which he was required to urinate into a container. The Plaintiff explained that his medical disability precluded him from urinating on demand and requested another type of drug test, such as a blood test. The drug test administrator denied the Plaintiff's request. Subsequently, even after drinking large quantities of liquid, the Plaintiff was unable to urinate and the test was cancelled.

---

[2] "In the interest of commercial motor vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor carriers to conduct…random…testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation…"  49 U.S.C. § 31306(b)(1)(A).

[3] "The purpose of this part is to establish programs designed to help prevent accidents and injuries resulting from the misuse of alcohol or use of controlled substances by drivers of commercial motor vehicles."  49 C.F.R. § 382.101.

As a result, the Town referred the Plaintiff to a drug treatment and rehabilitation program. The Plaintiff provided the Town with written medical documentation of his medical disorders, but, on May 18, 2009, he was again ordered to take a drug test by urinating in a container. The Plaintiff once again explained his inability to urinate into the container, but his request for an alternative method of testing, such as a blood test, was denied again. The Plaintiff then telephoned his wife to discuss the denied request for an alternative testing method. At that point, the plaintiff was ordered to leave the drug testing area.[4]

On June 1, 2009, the Town summoned the Plaintiff to a pre-termination hearing. At that hearing, he was advised that the May 18, 2009 incident was considered a second violation of the Town's drug-free policy and that, as a result, he was facing termination.  On June 4, 2009, the Town terminated the Plaintiff's employment because of his alleged failures of the two drug tests.

B. The Plaintiff's State Court Claim

That same day, June 4, 2009, the Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). Having obtained a release of jurisdiction from the CHRO, the Plaintiff filed a revised complaint in state court on February 7, 2011, alleging that the Town failed to accommodate his disabilities in violation of the Connecticut Fair Employment Practices Act ("CFEPA").

On February 22, 2011, the Town moved to strike the Plaintiff's revised complaint, arguing that FOTETA and its supporting regulations preempted the Plaintiff's CFEPA claim. See

---

[4]According to the defendant, the plaintiff "stepped outside of the [testing] facility and telephoned his wife." (Doc. # 22, at 2). Pursuant to 49 C.F.R. §40.191(a)(2), an employee is considered to have refused to take a drug test if he "[f]ails to remain at the testing site until the testing process is complete."

<u>Pond v. Town of North Branford,</u> No. NNHCV116016980S, 2011 WL 3278577, at *2 (Conn.

Super. Ct. July 6, 2011). The Town contended that the Plaintiff's CFEPA claim was preempted

because "(1) compliance with both CFEPA and FOTETA [would be] impossible and (2)

compliance with CFEPA [stood] as an obstacle to FOTETA's purposes and objectives." <u>Id.</u>  The

Plaintiff countered that CFEPA and FOTETA are consistent and that because CFEPA tracks the

ADA, it cannot conflict with FOTETA.

　　　By decision dated July 6, 2011, the state court granted the Town's motion to strike.  The

court began by setting out the proper standard of review applicable to a motion to strike: "The

purpose of a motion to strike is to contest . . .  the legal sufficiency of the allegations of any

complaint . . .  to state a claim upon which relief can be granted . . . . [A]ll well-pleaded facts and

those facts necessarily implied from the allegations are taken as admitted. . . ." <u>Id.</u> at *1 (internal

quotation marks omitted)  .  The court then framed the issue before it as "whether it is

inconsistent with FOTETA to require an employer to provide, as a reasonable accommodation

under CFEPA, a method of drug testing alternative to urinalysis for an employee, who, because

of shy bladder syndrome, is unable to provide a urine sample during a random drug test." <u>Id.</u> at

*7.

　　　After a thorough examination of FOTETA's statutory and regulatory scheme, the

congressional purpose behind FOTETA, and the basic principles of preemption, the court

answered the issue question in the affirmative.  Specifically, the court determined that:

> [P]roper implementation of FOTETA's drug testing regulations cannot result in
> violation of state discrimination laws. In fact, in <u>Kinneary</u> [v. City of New York,
> 601 F.3d 151 (2d Cir. 2010)], the Second Circuit decision implies that FOTETA,
> rather than preempting state and local discrimination statutes, is actually in accord
> with them in that the DOT regulations already provide for a reasonable

accommodation.  In the present case, the plaintiff . . . took advantage of the
accommodation built into the DOT regulations.  The regulations, however, do not
provide for or allow alternative methods of drug testing and the MRO [Medical
Review Officer] is not permitted [to] use alternative tests to comply with the
regulations.  As such, to require an employer to accommodate a plaintiff's
disability beyond that which is already provided for in accordance with the
regulations would make compliance with both CFEPA and FOTETA impossible.
Accordingly, to the extent that CFEPA requires an employer to provide reasonable
accommodations for a disability beyond that which FOTETA and its regulations
already provide for, FOTETA and its regulations preempt CFEPA.  Therefore, the
motion to strike is granted.

Id. at *10.

## III. DISCUSSION

The Town's primary argument in favor of judgment on the pleadings is that the doctrine

of *res judicata* bars the Plaintiff's complaint.  *Res judicata* is proper, it is argued, "because the

same claim was litigated in state court where a judgment was entered on the merits and Plaintiff

had ample opportunity to litigate his federal claims in the state court proceeding, but for whatever

reason, chose not to."  (Dkt. #21, at 1).

Analysis of the *res judicata* assertion must begin with the full faith and credit clause of 28

U.S.C. § 1738.  This relevant section states, "The . . . judicial proceedings of any court of any . . .

State . . . shall have the same full faith and credit in every court within the United States . . . as

they have by law or usage in the courts of such State. . . ."  28 U.S.C. § 1738.  It "requires federal

courts to give the same preclusive effect to state court judgments that those judgments would be

given in the courts of the State from which the judgments emerged."  Kremer v. Chemical

Construction Corp., 456 U.S. 461, 466 (1982); see also Jenkins v. City of New York, 478 F.3d

76, 85 (2d Cir. 2007) ("There is no doubt that a federal court must give to a state-court judgment

the same preclusive effect as would be given that judgment under the law of the State in which

the judgment was rendered." (internal quotation marks omitted)).  Therefore, this Court must

apply the *res judicata* doctrine as the Connecticut state courts would apply it.

Under Connecticut law, "[t]he doctrine of res judicata, or claim preclusion, [provides

that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent

action on the same claim."  <u>Delahunty v. Massachusetts Mutual Life Ins. Co.</u>, 236 Conn. 582,

589 (1996) (internal quotation marks omitted).  "The doctrine of res judicata . . . is conclusive . . .

as to the parties and their privies . . . ."  <u>Wade's Dairy, Inc. v. Fairfield</u>, 181 Conn. 556, 559

(1980).  Claim preclusion is a bar "not only as to every matter which was offered to sustain the

claim, but also as to *any other admissible matter which might have been offered for that*

*purpose*."  <u>Fink v. Golenbock</u>, 238 Conn. 183, 191 (1996).

Because it is clear that this federal action hosts the mutual parties from the state action

and that the Connecticut Superior Court entered a valid final judgment on July 6, 2011, this

Court only considers (1) whether the Plaintiff brings the same claim and (2) whether the state

court decision was rendered on the merits.

A.  Same Claim

Connecticut courts "have adopted a transactional test as a guide to determining whether

an action involves the same claim as an earlier action so as to trigger operation of the doctrine of

res judicata."  <u>Id.</u> (internal quotation marks omitted).   Claims barred by *res judicata* include "all

rights of the plaintiff to remedies against the defendant with respect to all or any part of the

transaction, or series of connected transactions, out of which the action arose. What factual

grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be

determined pragmatically, giving weight to such considerations as whether the facts are related in

-7-

time, space, origin, or motivation, [and] whether they form a convenient trial unit . . . ." Id. (internal quotation marks omitted). "In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." Powell v. Infinity Ins. Co., 282 Conn. 594, 604 (2007).

In this federal action, the Plaintiff brings a claim that certainly arose out of the same transaction, or series of connected transactions, that gave rise to his state court claim.  The Plaintiff's state court complaint arose from the exact two drug tests that gave rise to his complaint here.  The facts are indistinguishable as to time, location, and parties involved.  A simple comparison of the complaint here with the complaint in the state case reveals that they are identical.  Moreover, as the Town notes, "The fact that the Plaintiff's state court discrimination claim was asserted under the CFEPA, while his federal court complaint is brought pursuant to the ADA and Rehabilitation Act, is of no moment."  (Dkt. #22, at 7).  This Court agrees.

In Castellano v. U.S. Surgical Corp., No. CV054008844S, 2009 WL 5342492 (Conn. Super. Ct. Dec. 7, 2009), the plaintiff alleged discriminatory termination based on his physical disability. The plaintiff brought both a federal action alleging violation of the ADA and a state action alleging violation of CFEPA. The federal court granted defendant's motion for summary judgment and dismissed the complaint. Subsequently, the defendants argued in state court that the doctrine of *res judicata* barred the state action.  Although the state court opinion dealt primarily with the issue of pendent jurisdiction[5], the court noted that "each of the plaintiff's

---

[5]In Castellano, the court concluded that the plaintiff's state court action was not precluded on the basis of *res judicata* since the federal court, where the plaintiff had filed his initial action, "likely . . . would have declined to exercise pendent jurisdiction over the plaintiff's state law claims," 2009 WL 5342492, at *4, so that the plaintiff would not have been able to pursue those claims in his first action. No such concern applies in the instant case, since the plaintiff could have pursued his ADA and Section 504 claims in his first action filed in the state court .

claims arise out of the same transaction." Id. at *4 n1.  The fact that each of the claims arose under different statutory authority was of no moment in the transactional test. "When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.'" Id. at *3 (quoting Connecticut National Bank v. Rytman, 241 Conn. 24, 44 (1997)).

Accordingly, the Court concludes that for purposes of considering whether the Plaintiff's claims are barred by the doctrine of *res judicata*, the Plaintiff has brought the same claim that he previously brought to the state court system.

B. Rendered on the Merits

In opposition to the Town's motion for judgment on the pleadings, the Plaintiff contends that *res judicata* does not apply here, because the state court judgment was not entered on the merits, but was based on a lack of subject matter jurisdiction.  The Plaintiff equates the court's finding that the state statute was preempted by federal law with a finding that the court lacked subject matter jurisdiction.

The Town counters that the state court dismissed the Plaintiff's case pursuant to Connecticut Practice Book § 10-39 (motion to strike) and not Practice Book § 10-31(a) (lack of subject matter jurisdiction) and that a finding that a state statute is preempted by federal law does not implicate the court's subject matter jurisdiction. The Court agrees with both of the Town's contentions.

-9-

Under Connecticut law, a dismissal for lack of subject matter jurisdiction is not a decision rendered on the merits.  See e.g. Lewis v. Gaming Policy Board, 224 Conn. 693, 698–99 (1993) ("[A] court lacks discretion to consider the merits of a case over which it is without jurisdiction" (internal quotation marks omitted)).  In contrast, "A judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form . . . . A decision with respect to the rights and liabilities of the parties is on the merits where it is based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends."  Bruno v. Geller, 136 Conn. App. 707, 726 (2012) (internal quotation marks omitted).

Here, the Court finds three reasons why the state action was dismissed on the merits and not for lack of subject matter jurisdiction.  First, the state court explicitly set forth and applied the standard of review applicable to a motion to strike, under which "all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted."  Pond, 2011 WL 3278577, at *1.  The court did not explicitly set forth, nor did it apply, the standard of review applicable to a motion to dismiss for lack of subject matter jurisdiction, under which a court "need not conclusively presume the validity of the allegations of the complaint" if "the motion [to dismiss] is accompanied by supporting affidavits containing undisputed facts."  Ferreira v. Pringle, 255 Conn. 330, 346–47 (2001) (internal quotation marks omitted).

Second, the state court decision evidences the fact that judgment was not based on mere matters of jurisdiction or form.  The discussion included analysis of the congressional intent behind FOTETA and case law interpreting FOTETA, as well as application of that analysis to the

-10-

facts of the case.  The court then ruled on the Plaintiff's legal right to recovery, concluding that "to require an employer to accommodate a plaintiff's disability beyond that which is already provided for in accordance with the regulations would make compliance with both CFEPA and FOTETA impossible. Accordingly, to the extent that CEPA requires an employer to provide reasonable accommodations for a disability beyond that which FOTETA and its regulations already provide for, FOTETA and its regulations preempt CFEPA." <u>Pond</u>, 2011 WL 3278577, at *10.  Thus, the judgment was based on application of the law to the facts disclosed by the pleadings, not on mere matters of jurisdiction.

Lastly, this Court finds not a single mention of subject matter jurisdiction in the state court's opinion.  Since "[i]f at any point, it becomes apparent to the court that [subject matter] jurisdiction is lacking, the appeal must be dismissed," <u>Lewis</u>, 224 Conn. at 699, it is reasonable to expect that, even absent a motion to dismiss for lack of jurisdiction, the state court would have noted such a defect.  With no mention of subject matter jurisdiction in the state court opinion, it is difficult to envision how the granting of a motion to strike on preemption grounds was somehow a dismissal for lack of jurisdiction.

Moreover, the Plaintiff's contention that the state court's preemption finding was equivalent to a determination that the court lacked subject matter jurisdiction is contrary to Connecticut case law. "Federal preemption of a state law or cause of action does not necessarily implicate the court's subject matter jurisdiction.  It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." <u>Mullin v. Guidant Corp.</u>, 114 Conn. App. 279, 283 (2009) (internal quotation marks

omitted).  "[The Connecticut] Supreme Court has held that a claim of federal preemption of a state cause of action is waived unless pleaded as a special defense. . . . It is axiomatic, however, that [t]he subject matter jurisdiction requirement may not be waived by any party . . . ."  Id. at 283-84 (internal quotation marks omitted).

As noted above, the state court reached its decision after considering the facts disclosed by the pleadings, indications of congressional intent, and case law precedent.  The court did not find, contrary to Mullin, that federal preemption automatically implicated its subject matter jurisdiction.  Had it found such, it is reasonable to assume that the court would have dismissed the action without applying congressional intent and case law to the facts in an attempt to answer "whether it is inconsistent with FOTETA to require an employer to provide, as a reasonable accommodation under CFEPA, a method of drug testing alternative to urinalysis for an employee, who, because of shy bladder syndrome, is unable to provide a urine sample during a random drug test."  Pond, 2011 WL 3278577, at *7.

The Court notes that the Plaintiff's argument blurs the distinction between "ordinary preemption" and "complete preemption." "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims- i.e., completely preempted." Sullivan v. American Airlines, Inc., 424 F.3d 267, 272 (2d Cir. 2005). See Lister v. Stark, 890 F.2d 941, 943 n.1 (7th Cir. 1989) ("The use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine."). Complete preemption "applies only where a federal statute wholly displaces the state-law cause of action. . . . The Supreme

-12-

Court has narrowly interpreted the complete preemption doctrine, finding Congress intended to accomplish complete preemption in only three federal statutes: the Labor-Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act." Jones v. RCC Atlantic, Inc., No. 1:08-CV-196, 2009 WL 88344, at *2  (D. Vt. Jan. 12, 2009) (footnotes and citations omitted).

      "Ordinary preemption is a broader doctrine that operates to dismiss state claims on the merits and may be invoked in either federal or state court." Id. at *3 n.8. See also Community State Bank v. Strong, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011) ("Ordinary preemption simply allows a defendant to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law as an affirmative defense."). The state court held that CFEPA was preempted by FOTETA only "to the extent that CFEPA requires an employer to provide reasonable accommodations for a disability beyond that which FOTETA and its regulations already provide for . . . ." Pond, 2011 WL 3278577, at *10. This holding is consistent with the express preemption language contained in FOTETA: "A State or local government may not prescribe or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section." 49 U.S.C. § 31306(g). It is clear that the state court based its decision on ordinary preemption, which "operates to dismiss state claims on the merits . . . ." Jones, 2009 WL 88344, at *3.

      In sum, the Plaintiff's state court action, which involved the same claim as the one before this Court, was dismissed on the merits and his claim pending before this Court is thus barred by the doctrine of *res judicata*.

## V. CONCLUSION

For the foregoing reasons, the defendant's motion for judgment on the pleadings

(**doc. # 21**) is **GRANTED**. The Clerk is directed to close the case.

So **ORDERED** this   6th    day of March, 2013.

_____/s/ DJS_____
Dominic J. Squatrito
United States District Judge

-14-